United States District Court
Southern District of Texas
**ENTERED**
January 05, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LANCE ROYALL, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00092 |
| | § | |
| ENTERPRISE PRODUCTS | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before me is Defendant Enterprise Products Company's Motion for Summary Judgment ("Motion for Summary Judgment"). *See* Dkt. 27. After reviewing the motion, pleadings, and applicable law, I recommend that the Motion for Summary Judgment be **GRANTED**.

## BACKGROUND

In October 2017, Plaintiff Lance Royall ("Royall") began working for Defendant Enterprise Products Company ("Enterprise") as a Truck Maintenance Supervisor at Enterprise's Baytown terminal. Royall's job duties at Enterprise were extensive. The job description for the Truck Maintenance Supervisor position provided:

> The Truck Maintenance Supervisor will plan and schedule daily and weekly maintenance work schedules for trucks and equipment. Responsibilities include, but are not limited to:
> - Process priority "1" work requests into work orders for assigned areas.
> - Develop job plans and coordinate all job planning and preparation for scheduled work.
> - Coordinate the development of all required (regulatory, company, and general practice) routine and preventative maintenance procedures and schedules.
> - Prepare and implement yearly expense and capital budgets.
> - Generate requisitions for the materials and contract services required to execute planned jobs.
> - Ensure all materials, equipment, and support is available prior to scheduling the work to be performed.
> - Perform job cost estimating and tracking.
> - Work with Terminal Manager to prepare planned maintenance schedules.
> - Attend all scheduled maintenance/safety training and assistance with training of new employees or as needed.
> - Carry out supervisory responsibilities in accordance with Enterprise Products' policies and procedures.
> - Perform vehicle inspections that meet the qualifications requirements as required by regulations or company standards.
> - Train and guide all mechanics and shop personnel as required.

Dkt. 27-3 at 4.

While employed with Enterprise, Royall reported to Enterprise's Terminal Manager, Gary O'Neil ("O'Neil").  O'Neil in turn, interacted with Chad Woods ("Woods"), the Director of Trucking Operations, and Casey Teague ("Teague"), the Senior Director of Trucking.

On September 4, 2018, O'Neil met with Teague to discuss actions that needed to take place to improve morale in the Baytown maintenance section. During that meeting, O'Neil described various issues with Royall's performance, including:

- Gary "feeds" Lance daily priorities as he has no plan for each day.
- Lance's work ethic is characterized as "he just doesn't give a shit."
- Lance undermines Justin who he has placed in an informal leadership role.
- Gary has conducted counseling with Lance on several occasions to correct him.
- Atmosphere in Baytown is that they are one action or decision away from losing their jobs.

Id. at 10.

On Saturday, September 15, 2018, a few days after O'Neil met with Teague, Royall sustained an on-the-job shoulder injury after he tripped over a hose and fell.  As a result of the shoulder injury, Royall contacted Enterprise's Family and Medical Leave Act ("FMLA") administrator to discuss the possibility of taking

FMLA leave.  Royall did not follow through on taking FMLA leave.  Instead, he visited with an urgent care physician, who cleared him to return to work on Monday, September 17, 2018.[1]  He returned to work without restrictions on September 17, 2018.

Several weeks after Royall returned to work, on October 10, 2018, Senior HR Representative Brandi Johnson, based on information provided by Woods and O'Neil, issued Royall a Performance Improvement Plan ("PIP").  The PIP detailed several ongoing performance issues:

Description of Performance Problem:

Lance, during the past 12 months your actions and performance have not been aligned with what is expected of a successful Truck Maintenance Supervisor.  Specifically, you have failed to develop job plans and coordinate all job planning and preparation for scheduled work. There is a poor organization and lack of priorities in the shop resulting in an unclear plan on what is needed to be done on a daily and weekly basis. Although you have committed to putting together daily priorities, you have not followed through on this commitment. You have failed to coordinate the development of all required (regulatory, company, and general practice) routine and preventative maintenance procedures and schedules. Currently, you are behind on multiple areas of maintenance PMs, DOT inspection, power units, and trailers.

Secondly, you have failed to perform job cost estimating and tracking. On multiple occasions, the shop has been waiting on a piece of equipment and you had to be reminded that if was ready it needed to be picked up. Also, there have been multiple times in which you have put an "out of service" sticker on equipment and have failed to follow through on getting the equipment sent out, tracked, and fixed in a timely manner.

Lastly, you have failed to uphold your position as a leader and team player and carry out supervisory responsibilities in accordance with Enterprise Products' policies and procedures.  On 9/14/18, when told you would need to help out due to reduced staff, you responded by saying "I am not paid to help work on equipment in the shop."  This comment was made in front of your leadership team as well a member of the mechanic staff.   You have also failed to hold your team members accountable for following standard safety practices such as wearing safety glasses and cleaning their area after their shift.

Dkt. 27-3 at 7–8.  The PIP warned that Royall's "[f]ailure to meet the stated expectations below and achieve immediate and sustained improvement may result in further disciplinary action up to and including dismissal."  *Id*. at 8.

[1] The September 2018 injury, which occurred prior to Royall's 12th month of employment with Enterprise, is not covered under the FMLA.  *See Wright v. Arlington Indep. Sch. Dist.*, --- F. App'x ---, 2020 WL 6494217, at *4 (5th Cir. Nov. 4, 2020) ("To be eligible for leave under the FMLA, an employee must have been employed for at least 12 months by the employer and for at least 1,250 hours of service with the employer during the previous 12-month period.").

On October 30, 2018, a few weeks after Enterprise placed Royall on the PIP, Royall applied for FMLA leave due to an ongoing neck and spine related issue. Subsequently, Enterprise approved Royall's request for intermittent FMLA leave, retroactively going back to the October 30, 2018 request date.[2]

Six days after Royall requested approval for intermittent FMLA leave, O'Neil, Woods, and Shane Mauldin, another Enterprise employee, met with Royall to discuss his performance since the issuance of the PIP. In support of summary judgment, Enterprise submitted O'Neil's sworn declaration, which describes the November 5 meeting as follows:

> 17.    On November 5, 2018, a meeting was held at the terminal to discuss with Royall his lack of progress under the PIP. I attended the meeting along with Chad Woods, Shane Mauldin and Royall. During the meeting, Woods reviewed the PIP with Royall and identified several areas of performance in which Royall was not meeting expectations, including: (1) failure to develop job plans and coordinate planning of the work; (2) supervisory skills needed improvement and there was a lack of follow-up with mechanics to make sure they were doing their jobs correctly; (3) and failure to take care of paperwork for inspections on trailers. During the meeting, Royall made a comment that work was not getting done because the mechanics were running around like chickens with their heads cut off. I told Royall that's because he failed to plan their work. If Royall had planned the work the previous Friday, then the mechanics would have known what to do on Monday when they arrived at work. I did speak to Royall on Friday, November 2, 2018, about the number of trailers he still had out of service in the yard at the terminal. Royall did not take any steps over the weekend to have a work plan ready for his mechanics on Monday, November 5, for them to work on the out of service trailers. Also, Royall was asked at the November 5 meeting about some trailers that still needed to be inspected; Royall told us that he could not locate the paperwork needed for the inspections of those trailers. This is just another example of Royall's ongoing lack of organization and planning.

Dkt. 27-6 at 4. The day after the meeting, on November 6, Woods emailed Thomas Johnson ("Johnson"), Senior Director of Human Resources, offering a detailed account of what transpired in the November 5 meeting. *See* Dkt. 27-7 at

---

[2] This intermittent FMLA leave is the only leave granted prior to Royall's gastric bypass procedure in November 2018. It is unclear to me whether the intermittent FMLA leave was understood to cover that procedure. Neither party has provided sufficient summary judgment evidence to clarify this point.

12–13.  Woods's email to Johnson corroborates O'Neill's description of the November 5 meeting, differing only in the amount of details provided.  *Compare* Dkt. 27-6 at 4, *with* Dkt. 27-7 at 12–13.  Pertinent here, Woods's email contains two specific details that are worth mentioning.  First, Woods recounts that when he asked Royall "if he had any comments or anything that he would like to discuss," Royall simply "brought up . . . the fact that he will be having a medical procedure next week and that he will be out for a couple weeks."  Dkt. 27-7 at 13.  According to the summary judgment record, this is the first time Royall informed Enterprise about his forthcoming gastric bypass procedure.   Second, and importantly, Woods expressed his "opinion that [Royall's] performance is not sustaining and that we have seen little to no improvement since the PIP was administered," and Royall's "inability to plan, guide, and communicate has proven itself over the last year and I believe he is currently providing no value to the growth" of Enterprise.  *Id.*

Shortly after the November 5 meeting, Woods recommended to Teague that Enterprise terminate Royall's employment.  Teague concurred with Woods's recommendation and passed the request along to Johnson and Bill Hall, the Vice President of Trucking and Marine.   By November 9, 2018, all necessary Enterprise personnel approved of Royall's termination.  However, in light of Royall's upcoming gastric bypass surgery, the termination was deferred until after he returned to work from his surgery.  It's unclear whose idea it was to defer Royall's termination until after his return to work.  *See* Dkt. 31-5 at 12 (Hall

taking credit for the idea to postpone the termination); Dkt. 31-6 at 22 (Johnson taking credit for the idea to postpone the termination).

On November 19, 2018, Royall underwent the gastric bypass surgery.  He was released to return to work without restrictions on November 26, 2018, and he resumed work that day.  Consistent with the earlier determination, Enterprise terminated Royall's employment on December 3, 2018.  According to O'Neil, "Royall was still having performance issues at the time of his termination in December 2018."  Dkt 27-6 at 5.

On March 6, 2019, Royall filed this suit, alleging "Enterprise discriminated and/or retaliated against [him] for invoking his rights protected under the FMLA."  Dkt. 1 at 3.  Enterprise now moves for summary judgment.[3]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is "genuine" if the evidence, taken as a whole, could lead a rational trier of fact to find for the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive

---

[3] In moving for summary judgment, Enterprise contends that the substance of Royall's claim is strictly an FMLA retaliation claim, not a discrimination claim.  *See* Dkt. 27 at 20 n.10.  Royall tacitly agrees with Enterprise in his summary judgment response, explaining that "[t]his is an FMLA retaliation claim."  Dkt. 31 at 5.  Thus, I analyze Royall's claim consistent with the characterization that he has alleged only a FMLA retaliation claim.

determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenont v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

A summary judgment movant who does not bear the burden of persuasion at trial can satisfy its initial burden on the motion by pointing to the non-movant's lack of evidence to support an essential element of its claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A movant may also satisfy its initial burden by producing evidence that negates an essential element of the non-movant's claim or defense. *See id.*

If the movant carries that initial burden, the burden shifts to the party opposing the motion to present competent summary judgment evidence showing the existence of a genuine fact dispute. *See Matsushita*, 475 U.S. at 586–87. "[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of [his] pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Rather, the nonmoving party must "go beyond the pleadings" and submit competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (quotation omitted). *See also Matsushita*, 475 U.S. at 586 (To avoid summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."). Significantly, conclusory allegations and unsubstantiated assertions do not satisfy

the non-movant's summary judgment burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

"In assessing whether genuine disputes of material fact exist, the court may not undertake to evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *Matter of Green*, 968 F.3d 516, 520 (5th Cir. 2020) (quotation omitted). The court "must instead view all facts in favor of the non-moving party," and draw all reasonable inferences in the non-movant's favor. *Id.*

## ANALYSIS

The FMLA has two distinct types of provisions: prescriptive and proscriptive. *See Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 834 (5th Cir. 2020). The prescriptive provisions "create a series of entitlements or substantive rights." *Id.* (quotation omitted). Under the FMLA, eligible employees are entitled to 12 weeks of unpaid leave in a 12-month period for certain qualifying reasons, such as "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not interfere with the exercise of any right provided under the FMLA. *See id.* § 2615(a)(1). The proscriptive provisions, on the other hand, protect employees from discrimination or retaliation for exercising or trying to exercise their FMLA rights. *See Amedee*, 953 F.3d at 834. At times, the Fifth Circuit has "described claims brought under § 2615(a)(1) for violations of the prescriptive provisions as 'interference' claims and those brought under § 2615(a)(2) for violations of the proscriptive provisions as 'retaliation' claims."

8

*Park v. Direct Energy GP, LLC*, --- F. App'x ---, 2020 WL 6139856, at *3 (5th Cir. Oct. 19, 2020).  Royall asserts only a retaliation claim.

In the absence of direct evidence of retaliatory intent, I must apply the familiar *McDonnell Douglas* burden-shifting framework to Royall's FMLA retaliation claim.  *See Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019).  Under this framework, Royall must first establish a *prima facie* case of retaliation by showing that "(1) he engaged in a protected activity, (2) [Enterprise] discharged him, and (3) there is a causal link between the protected activity and the discharge."  *Amedee*, 953 F.3d at 835 (quotation omitted).  If Royall makes a *prima facie* case, the burden shifts to Enterprise to articulate a legitimate, nonretaliatory reason for its decision.  *See id.*  Once Enterprise gives a legitimate reason, the burden shifts back to the plaintiff to prove that the employer's stated reason is a pretext for retaliation.  *See id.*

For purposes of this discussion, I assume without deciding that Royall has made a *prima facie* showing of retaliation.  Thus, the burden is on Enterprise to proffer a legitimate, nonretaliatory reason for Royall's termination.

Enterprise asserts that "[d]espite being put on a PIP, Royall continued to perform well below the company's expectations, and he was terminated because of that."  Dkt. 27 at 27.  In other words, Enterprise contends that it terminated Royall for his poor job performance.  Enterprise's burden "is one of production, not persuasion, and it involves no credibility assessment."  *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quotation omitted).  The Fifth Circuit has

been very clear that "job performance is a legitimate, non-retaliatory reason for termination." *Id.* (cleaned up). Thus, Enterprise easily satisfies its burden.[4]

Because Enterprise gave a legitimate reason for its decision, the burden shifts back to Royall to show that the stated reason is pretext for retaliation. To avoid summary judgment, Royall must show that there is a "conflict in substantial evidence" on this issue. *Id.* (quotation omitted). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 561–62 (quotation omitted).

Royall attempts to demonstrate pretext in a few different ways. I address each argument in turn.

**Inconsistencies.** First, Royall identifies, and attacks alleged inconsistencies in Enterprise's summary judgment evidence. Specifically, Royall contends that it is unclear "who decided to place [him] on a PIP." Dkt. 31 at 18. On this point, Royall alleges that Woods testified it was O'Neil's idea to place him on a PIP, and O'Neil submitted a declaration stating that it was Woods's idea. *See id* at 12. In my opinion, this alleged inconsistency does not amount to a conflict in substantial evidence on the issue of pretext. As detailed above, the summary judgment evidence demonstrates that HR Representative Brandi Johnson issued Royall the PIP based on information provided by Woods and

---

[4] Royall does not contest whether Enterprise has carried its burden. *See* Dkt. 31 at 18 ("Royall does not dispute that Enterprise has articulated a potential non-retaliatory reason for his termination.").

O'Neil.  Royall does not seem to dispute this fact.  Instead, Royall focuses solely on whether Woods or O'Neil came up with the idea to place him on a PIP in the first instance.  I simply cannot discern how such a detail tends to demonstrate that Enterprise's proffered reason for its termination decision was pretext for retaliation.  Royall has not pointed to any evidence suggesting that such a distinction should affect the pretext analysis in any way.  Indeed, this distinction seems to be a "mere challenge to the underlying facts of [Enterprise's] decision," which the Fifth Circuit has expressly held is "insufficient to create a fact issue of pretext." *Ray v. United Parcel Serv.*, 587 F. App'x 182, 192 (5th Cir. 2014).

Royall also contends that it is unclear "who allegedly decided issues relating to the timing of [his] termination." Dkt. 31 at 19.  As I described above, it is unclear who decided to defer Royall's termination until after his return to work following the gastric bypass surgery.  While this detail remains hazy, I cannot discern how it tends to demonstrate in any way that Enterprise's proffered reason for its termination decision was pretext for retaliation.

**Reasons For Termination.**   Next, Royall argues that Enterprise's motion "referenc[es] reasons it terminated Royall that were not articulated in the PIP or at the time of his termination, thus indicating these are after-the-fact falsely created reasons to try to justify its decision." Dkt. 31 at 18.  This argument attempts to latch on to the body of case law that stands for the proposition that "[a] court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct." *Nasti v. CIBA Specialty Chems. Corp.*,

492 F.3d 589, 594 (5th Cir. 2007).  I recognize this legal principle, but I reject the notion that Enterprise has offered inconsistent or conflicting explanations for terminating Royall.   Enterprise's motion for summary judgment clearly articulates that Royall was terminated for poor job performance stemming from his failure to fully satisfy the PIP.  Enterprise has been consistent on this point.

The PIP, as reflected above, uses broad language to describe Enterprise's evaluation of Royall's deficiencies.  In fact, the PIP first identifies the primary responsibilities of Royall's job title before going into a description of his performance problem.  The performance problem description closely tracks the language used in the section describing Royall's primary responsibilities.  Thus, the PIP does not identify specific examples of Royall's performance deficiencies; instead, it tends to identify entire categories of concern.  For example:

> There is a poor organization and lack of priorities in the shop resulting in an unclear plan on what is needed to be done on a daily and weekly basis. . . .  You have failed to coordinate the development of all required . . . routine and preventative maintenance procedures and schedules.   Currently, you are behind on multiple areas of maintenance PMs, DOT inspection, power units, and trailers.

Dkt. 27-3 at 7.  The PIP also states:

> On multiple occasions, the shop has been waiting on a piece of equipment and you had to be reminded that i[t] was ready [and] needed to be picked up.  Also, there have been multiple times in which you have put an "out of service" sticker on equipment and have failed to follow through on getting the equipment sent out, tracked, and fixed in a timely manner.

*Id.*  Indeed, in recommending corrective conduct, the PIP also stated Enterprise's expectations moving forward in extremely broad terms:

1.  You are expected to develop job plans and coordinate all job planning and preparation for scheduled work

2.  You are expected to follow the guidance given to you by your leadership team as long as they pertain to the policies of Enterprise Trucking Company

3.  You will conduct yourself in an appropriate manner and accept guidance from leadership and trainers

4.  You are expected to communicate timely and accurate reports to the leadership team while following company guidelines

5.  You are expected to perform job cost estimating and tracking

6.  You are expected to uphold your position as a leader and team player and carry out supervisory responsibilities in accordance with Enterprise Products' policies and procedures

*Id.* at 8.

In this litigation, as stated above, Enterprise expressly states that it terminated Royall due to his post-PIP job performance.[5]  Instead of leaving it there, Enterprise offers specific examples of incidents supposedly substantiating its assessment of Royall's job performance.  Royall identifies at least three of these examples as "after-the-fact" reasons for his termination: (1) Enterprise's discussion of an alleged missing trailer,[6] (2) Enterprise's discussion of a problematic 80 hour tractor repair,[7] and (3) Enterprise's contention that O'Neil had spoken to him about spot checking the work of the mechanics and that

---

[5] I am not aware of any summary judgment evidence demonstrating that Enterprise expressed a different rationale outside of this litigation.  This distinguishes Royall's argument from the many cases involving the Equal Employment Opportunity Commission ("EEOC"), where the employer offers different reasons to the EEOC and subsequently to the federal court.  For example, in *Bennett v. Consol. Gravity Drainage Dist. No. 1*, 648 F. App'x 425, 430–31 (5th Cir. 2016), the Fifth Circuit considered an argument that an employer's proffered explanations to the district court were pretextual because the employer had offered different justifications for the plaintiff's termination to the EEOC than it offered to the district court.

[6] Dkt. 31-1 at 2 (explaining that the issue of the missing trailer "was not mentioned in the PIP").

[7] *Id.* at 3 ("[T]his alleged problem was not referenced in the PIP.").

preventive maintenance was not being done correctly.[8]  In the face of the PIP's broad language, even viewing the facts in the light most favorable to Royall, I'm not convinced that Enterprise is offering new reasons for terminating Royall. Instead, it seems reasonably clear that Enterprise has only offered examples of conduct that it believes ran afoul of the PIP's broad language.  Because Royall has not identified inconsistent or conflicting explanations for Enterprise's conduct, he is not entitled to the benefit of any negative inference.

Even if I did construe Enterprise's motion to be inconsistent with its previously stated reason for terminating Royall, this would still not carry the day. The Fifth Circuit has explained that "in those cases in which we have focused on inconsistent rationales, there has been otherwise strong evidence of pretext." *Bennett*, 648 F. App'x at 430.  In this case, Royall has "presented neither significant inconsistencies nor other evidence—much less 'strong' evidence—of pretext."  *Harper v. Fort Bend Indep. Sch. Dist.*, No. H-16-1678, 2017 WL 1881971, at *10 (S.D. Tex. May 9, 2017).

**Credibility.**  Royall asserts in summary fashion that he has presented evidence raising "[o]ther concerns about the credibility of Enterprise's witnesses."  Dkt. 31 at 19.  The meaning of this statement, in the context of the summary judgment response, is not crystal clear.  At oral argument, I explored the issue of credibility.  My understanding of Royall's position is that he would have the opportunity to impugn the credibility of Enterprise's various witnesses if

---

[8] *Id.* (explaining that this "was not referenced in the PIP").

this matter were allowed to proceed to trial.  This is certainly true, but at this summary judgment stage this does nothing to raise an issue of genuine fact regarding pretext.

**Royall's Predecessor.**  Royall also attempts to show pretext by relying on a disparate treatment theory, contending that Enterprise treated his predecessor, Lonnie Harms ("Harms"), "more favorably even though evidence suggests he (and not Royall) was the cause of delays/problems with the tractors and trailers."  Dkt. 31 at 19.  "Disparate treatment occurs where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct."  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011).  As pointed out by Enterprise, Royall's motion describes Harms as having contributed to the tractor and trailer issue, which at best is merely a portion of the deficiencies outlined in Royall's PIP, and "Royall was terminated for far broader performance issues than merely mishandling out-of-service equipment."  Dkt. 35 at 11.  In other words, Harms and Royall are not similarly situated employees with nearly identical conduct.  Thus, Royall's reliance on Enterprise's treatment of Harms is unpersuasive.

**Job Performance Factual Disputes.**  Lastly, Royall argues that there are "[f]actual disputes about Royall's job performance, including the servicing of tractors and trailers, management of mechanics, the alleged missing trailer, his work hours, and the basis of being short-staffed."  Dkt. 31 at 19.  Summed up,

Royall attacks the facts underlying Enterprise's evaluation of his job performance. I find this line of argument unpersuasive.

The Fifth Circuit has repeatedly explained that "[p]retext is established . . . by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016) (quotation omitted). The use of the word "false" is somewhat misleading because it suggests that a litigant need only show that the facts underlying a job performance evaluation are false or incorrect. But the Fifth Circuit has further explained that "[a]n employer's explanation is false or unworthy of credence if it is not the real reason for the employment action." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). Thus, "[t]he issue isn't whether [Enterprise's] assessment of [Royall's] performance was correct or fair; the issue is whether [Enterprise's] perception of [Royall's] performance was the real reason for his termination." *Park*, 2020 WL 6139856, at *6. And, as succinctly explained by one court, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason, and a dispute in the evidence concerning job performance does not provide a sufficient basis for a reasonable fact finder to infer that the proffered justification is unworthy of credence." *Davis v. RealPage, Inc.*, No. 3:18-CV-0986-D, 2020 WL 1325201, at *13 (N.D. Tex. Mar. 20, 2020) (cleaned up). *See also Ray*, 587 F. App'x at 192 ("[W]e have held that an employee's mere challenge to the underlying facts of an employer's decision, or the employer's assessment of those

16

facts, are insufficient to create a fact issue of pretext."); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (noting that even an incorrect belief that an employee's performance is inadequate can constitute a legitimate, nondiscriminatory reason for an employment decision, and that evidentiary disputes concerning job performance are insufficient to show that a proffered justification is unworthy of credence).

In this case, Royall attempts to create a fact issue by disputing Enterprise's evaluation of his performance; this he cannot do. *See Singleton v. Young Men's Christian Ass'n (YMCA) of Greater Hous.*, No. H-17-2903, 2019 WL 2617097, at *9 (S.D. Tex. June 26, 2019) ("But plaintiff cannot create a fact issue on summary judgment by disputing her employer's evaluation of her performance."). To carry his burden, Royall "must cite evidence from which a reasonable fact-finder could conclude that [his] employer did not honestly believe that [his] performance was deficient and deserving of termination." *Id.* Royall has not done this. The summary judgment record clearly reflects that prior to Royall ever indicating a need for FMLA leave, O'Neil had already met with Teague to discuss his perception of Royall's poor job performance. The summary judgment record then memorializes the PIP and its attendant meeting, as well as the related November 5, 2018 meeting and the emails and declarations regarding the same. This summary judgment evidence is consistent in one key regard: Enterprise personnel charged with evaluating Royall's job performance found his job performance deficient. Royall has not presented any evidence suggesting that

Enterprise did not honestly believe that his performance was deficient and deserving of termination.

Consequently, Royall has not carried his burden to create a fact issue that Enterprise's reason for terminating him was mere pretext and, thus, summary judgment in favor of Enterprise is appropriate. *See Park*, 2020 WL 6139856, at *7 ("[Plaintiff] didn't meet his burden of raising a genuine dispute of fact on pretext, so the district court didn't err in granting summary judgment in favor of [employer] on [Plaintiff's FMLA] retaliation claim."); *Byrd v. City of Houston*, No. H-18-778, 2019 WL 355746, at *11 (S.D. Tex. Jan. 29, 2019) ("In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." (quotation omitted)).

## CONCLUSION

For the reasons identified above, I recommend that the Motion for Summary Judgment (Dkt. 27) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 5th day of January 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE